## Case No. 2,846.

CLARKE et al. v. CLARKE et al.

[3 Woods, 408.][1]

Circuit Court, S. D. Georgia.    April Term, 1877.

### STATE TAXATION OF EXPORTS.

Logs which were the property and in possession of persons engaged exclusively in exporting timber from the United States to foreign countries, which had been purchased from citizens of Georgia for the purpose of exportation, were in a port of Georgia and of the United States awaiting shipment, though not on shipboard, which had been inspected according to the laws of Georgia and were afterwards exported by the owners, were, while so awaiting shipment and still on land, "exports" within the meaning of section 1, article 10, of the constitution of the United States, and as such were protected from imposts or duties or any taxation by the state of Georgia by whatever name it might be called, except such as was absolutely necessary for the execution of the inspection laws of the state.

[Cited in Kidd v. Flagler, 54 Fed. 369.]

Heard on demurrer to the declaration. The declaration averred in substance: That the plaintiffs [James E. Clarke & Co.] were aliens and subjects of Great Britain and partners in business; that on the first day of April, 1875, at the city of Darien in the state of Georgia, the plaintiffs, as such partners, were merchants engaged exclusively in exporting timber from the port of Darien to Great Britain and to other foreign countries, and had in their possession in said city a large quantity of timber as exports which had been purchased and fully paid for to citizens of Georgia, and inspected according to the laws of the state of Georgia before the said April 1, 1875, and at the time was being shipped and awaiting shipment to Great Britain, and which, before the trespasses of the defendants complained of, was

---

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

in fact exported. That the plaintiffs were required by defendant, S. E. Clarke, to return said timber for taxes, which they declined to do. That said Clarke, pretending to act as receiver of tax returns for the county of McIntosh, assessed said timber at a valuation of $16,000, and assessed a state and county tax thereon of $240. That said Clarke, after said timber had been exported as aforesaid, placed the said assessment in the hands of the defendant Allen McDonald, who claimed to be collector of taxes for McIntosh county, and said McDonald, after demanding said tax of plaintiffs, which they refused to pay, issued an execution and delivered the same to the defendant Thomas B. Blount, sheriff, commanding him to enforce the payment of said tax out of the property of the plaintiffs. Thereupon Blount levied said execution on one hundred square logs, the property of plaintiffs, and sold and disposed of, at public sale, forty-four said logs of timber, of the value of one thousand dollars, for which they bring suit. To this declaration the defendants [S. E. Clarke and others] filed a general demurrer.

Julian Hartridge and W. S. Chisholm, for plaintiffs.

Rufus E. Lester (who filed a brief of N. J. Hammond, lately attorney general of Georgia), for defendants.

WOODS, Circuit Judge. The plaintiffs claim that the logs of timber mentioned in the declaration on which the said tax was levied, were exports, and therefore exempt from state taxation under section 10, article 1, of the constitution of the United States, which declares: "No state shall, without the consent of the congress, levy any imposts or duties on imports or exports except what may be absolutely necessary for executing its inspection laws." Section 799 of the Code of Georgia declares that "all real and personal estate, whether owned by individuals or corporations, resident or non-resident, are liable to taxation unless specially exempted," and section 798 of the same Code exempts from taxation "all property specially exempted by the constitution of the United States."

The defendants claim, first, that the timber logs of the plaintiffs on which the tax was levied were not "exports" in the sense in which that word is used in the constitution of the United States: and, second, that the tax levied was neither an "impost" nor a "duty," and therefore the said tax was not prohibited by the constitution of the United States. The logs on which the tax was levied were the property of, and were in possession of persons engaged exclusively in exporting timber to foreign countries, they were purchased from citizens of Georgia for the purpose of exportation, they were in a port of the United States awaiting shipment, they had been inspected according to the laws of the state, and the purpose of the

owners to export the logs was, after the levy of the tax thereon, actually carried out and the logs were exported. It is clear, and it seems to be conceded by defendants, that if the logs had actually been on shipboard when the tax was levied, they might have well been considered exports. Is the fact that they were still on land, though awaiting shipment, such a circumstance as deprives them of their character as exports? The reasoning of the court in the case of Brown v. Maryland, 12 Wheat. [25 U. S.] 419, demonstrates ·that it is not. The court in construing section 10, article 1, of the constitution, says: "The limitation is, 'except what may be absolutely necessary for executing the inspection laws.' Now, the inspection laws, so far as they act on articles for exportation, are generally executed on land before the article is put on board the vessel; so far as they act on importations, they are generally executed on articles which are landed. The tax or duty of inspection, then, is a tax which ·is frequently if not always paid for services performed on land, while the article is in the bosom of the country. Yet this tax is an exception to the prohibition on the states to lay duties on imports or exports. The exception was made because the tax would otherwise have been within the prohibition." Mr. Madison, in defending the clause under consideration, in the convention of Virginia called to adopt the constitution, said: "Some states export the produce of other states; Virginia exports the produce of North Carolina; Pennsylvania those of New Jersey and Delaware, and Rhode Island those of Connecticut and Massachusetts. The states exporting wished to retain the power of laying duties on exports to enable them to pay expenses incurred. The states whose produce was exported by other states were extremely jealous, lest a contribution should be raised of them by the exporting states by laying heavy duties on their own commodities. If this clause be fully considered, it will be found to be more consistent with justice and equity than any other practicable mode." These views show that, in the opinion of Mr. Madison, the commodities of the producing states were considered exports even before they reached the port of shipment. It seems clear, then, from these authorities, that these logs were, when the tax was laid upon them, even though they were still on land, exports within the meaning of the constitution of the United States, and as such protected from imposts or duties by the state. But the defendants claim that the tax upon the logs was a tax levied upon the general mass of property in the state, and does not therefore fall within the constitutional prohibition, being neither an "impost" nor a "duty." This construction would defeat the purpose for which section 10, article 1, was adopted. It would put it in the power of the state, by changing the manner of levying the tax, and

by giving it another name, to evade the prohibition of the constitution.

In the case of Low v. Austin, 13 Wall. [70 U. S.] 29, the supreme court of the United States, having the subject under consideration, said: "The supreme court of California appears from its opinion to have considered the present case as excepted from the rule laid down in Brown v. Maryland [supra], because the tax levied is not directly upon imports as such, and consequently the goods imported are not subjected to any burden as a class, but are only included as a part of the whole property of its citizens, which is subjected equally to an ad valorem tax. But the obvious answer to this position is found in the fact which is in substance expressed in the citations, made from the opinions of Marshall and Taney, that the goods imported do not lose their character as imports and become incorporated into the mass of the property of the state until they have passed from the control of the importer or been broken-up by him from their original cases. While retaining their character as imports a tax upon them in any shape is within the constitutional prohibition. The extent and character of the tax are mere matters of legislative discretion." This authority is directly opposed to the claim of defendants under consideration.

These views dispose of the main questions in this case. In the case of Brown v. Maryland, supra, Mr. Chief Justice Marshall remarks: "The constitutional prohibition to levy a duty on imports may certainly come in conflict with their acknowledged power to tax persons and property within their territories. The power and the restriction on it, though quite distinguishable when they do not approach each other, may yet, like the intervening colors between black and white, approach so nearly as to perplex the understanding as colors perplex the vision in making a distinction between them, yet the distinction exists and must be marked as the cases arise. Till they do arise it might be premature to state every rule as being universal in its application." Profiting by this caution, all I undertake to decide in this case is, that under the circumstances set out in the declaration, the logs of the plaintiffs were exports and exempted from state taxation by the constitution of the United States. As they are exempted by the federal constitution they were exempted from state taxation by express provision of the Code of Georgia. Code, § 798, par. 1; Act 1875, § 9; [Laws Ga.] 117. The defendants, in enforcing the tax levied on plaintiffs' property, were acting without authority of law. The assessor and collector were clearly without jurisdiction to assess and collect the tax, and the execution issued to the sheriff is no protection to him. They are all trespassers alike, and this action is well brought against them. Wise v. Withers, 3 Cranch [7 U. S.] 331.

Demurrer overruled.